The first case on our docket this morning is 22-30089, United States v. Kelley. Good morning, Your Honor. I am Chris Averly, court-appointed counsel for Mr. Stephen Kelley, who, while in jail awaiting prosecution for raping his stepchildren, he drafted specific instructions to kill his ex-wife, the mother of those children. To this he admits, according to the government, Kelley wanted to kill his wife so she could not testify against him on charges which, if convicted, would put him away for the rest of his life. At trial, Kelley tried to tell the jury that he wrote those instructions under duress at the direction of a fellow inmate, suspected murderer Nicholas Emanuel, who was also the strongman and sort of the boss of the prison, or at least that part of the prison. And Kelley's efforts at recounting the interactions he had with Emanuel were stifled or stymied by the government's repeated hearsay objections. Now, as I think the government agrees on appeal, those objections were not well taken, and the court's ruling on those objections were incorrect. Okay, but let's talk about what happened, which is the attorney said, Your Honor, this is hearsay. The court said, okay, any exception to the hearsay rule on this, on that you're asserting? And the answer was, Your Honor, I'll ask him to specify not what Mr. Emanuel said, but anything that he observed him doing. It wasn't, yes, the exception is, we're not trying to prove the truth of it, which is something else. So why isn't that a waiver of this argument, not just a forfeit or just a plain error? Well, we would argue that it's plain error because he didn't object to it. But it's plain error because it is error. Okay, but my question is when the judge expressly, so plain error is because you forfeited and you didn't make your point or whatever at the trial because, like, you weren't thinking or whatever. But when you don't respond to an actual question from the judge, why isn't that a waiver of the point you're making now rather than we just need to assert it under plain error? Well, if the court had said nothing, would we be talking about plain error? But because the court asked him and he didn't, because he was clearly as ignorant as the rest of the lawyers in the room at the time, he didn't know that the court was wrong. So that fact shouldn't turn a plain error issue into a waived issue, we would argue. And, you know, Rule 103, certainly there's case law that I've cited in the brief that says this is a plain error. I would argue that Rule 103 suggests that he did all he needed to do to preserve the error. Rule 103 says party may claim error in a ruling to admit or exclude evidence only if the error affects special rights. And if the ruling excludes evidence, which it does in this case, the party informs the court of its substance by an offer of proof unless the substance was apparent from the context. It's clear what he was trying to do, either directly or by context. He was trying to get the statements of Emanuel in there. And I would argue that under a plain reading of 103A, that gives you de novo review. That's our position on that. Now, the government claims that the issue is harmless anyway because in the end he got that defense before the jury. And we disagree with that harmless error analysis for two reasons. The first is this defense was a difficult one to make for sure. And trying to convince the jury that he was coerced required bringing the jury into a world that they were obviously not familiar with. And to do that, he needed to provide the details of his interactions that he had with his fellow inmates, most particularly Nicholas Emanuel. But in the end, all he could do was little more than say he was forced to write the letter so that he could be held over him. Backing up, though, to was there an exception, the problem is there isn't an exception to the hearsay rule in this case. Because it's not hearsay. So it wasn't offered for the truth. It couldn't be offered for the truth. Most of it couldn't be because they were statements of instructions and such threats. Those are not hearsay under any condition. I don't understand that argument. So when he was asked whether or not it was some exception, his non-response you're claiming was an appropriate response because it's not an exception? If it's not an appropriate response, counsel should have said, make no mistake, counsel should have said, Your Honor, there's no exception that applies here because it's not hearsay to begin with. That's what counsel should have said. But it would be hearsay but for the contention that it's not being offered to prove the truth of the matter of circuit. I guess maybe that's just semantics, whether or not that's an exception to the hearsay rule or not hearsay. You agree with me that if it were being offered to prove the truth of the matter asserted, it would be hearsay? Yes. All right. Well, anyway, the second problem with the government's claim that it is harmless is that it overlooks the damage done to Kelly's ability to present this defense because every time he spoke, the jury knew that he was trying to sneak in evidence that wasn't proper. And meanwhile, after effectively shutting him down on his direct examination on this defense, they argue in closing that his defense didn't make any sense anyway and that if you look at the surveillance video, he didn't look like he was coerced. So they got to rebut it, but they didn't let him bring it in. But it showed him, the video showed him showing the letter to Emmanuel before he gave it to another inmate to mail it. Isn't that right? Yes. All right. Well, anyway, so bringing us to the second issue, which is a related issue, which I think we would agree is preserved, was the district court shut him down entirely on his ability to rebut the government's motive evidence. It's very powerful motive evidence that he committed this crime because his wife basically is going to have him put away for the rest of his life. By killing his wife, she doesn't get to testify. He gets to go free. So he wanted to put on evidence that the state child rape charges lacked any evidentiary basis. I mean, the purpose of this evidence, as the government argued and as the jury was told by the court, was to prove motive. To rebut this evidence, Kelly sought to show that he knew at the time he wrote those murder instructions that the state, through its investigation of the state charges, got statements from the two victims. The older child victim said she had never been raped. The other one gave inconsistent statements that were inherently unbelievable. And in any case, the medical examination of the younger victim did not corroborate her initial claim that she had been raped 200 times. So, and additionally, one of the two victims, I'm not sure which, said that the mother told him when this abuse happened. So what he wanted to do was show that he knew the matter would eventually be dismissed, so that he didn't need to take the drastic measure of killing his wife, ex-wife, to prevent her from testifying. In ruling against Mr. Kelly, the court said that the evidence he wanted to present was irrelevant, and that in any case it was prejudicial to the government. But in so holding, the court gave no regard to the enormous prejudice suffered by Mr. Kelly for not being able to prove that maybe he wasn't a child rapist. And the notion, the prejudiced notion that this evidence would confuse the jury, I think it's overstated. The state, the government came in and said he wanted to kill his wife so she wouldn't testify. All he wanted to do was say, no, I don't have that motive, because I knew these were going to be dismissed, and here's the reason why. That's not so confusing, we would argue. Meanwhile, hearing that he was arrested for raping his stepchildren is highly prejudicial. Juries understand quite correctly, I think, that when someone is arrested for a crime, there's a good chance that they're guilty of that crime. And there is no crime that is more despicable in motion racing than raping a child. I think that for relying on a jury instruction not to consider this evidence is rather wishful thinking. And in this case, it's even more prejudicial because Mr. Kelly got on the stand. He testified, but he didn't say a word to the jury about denying these charges. What was the jury to make of that? The jury not knowing that the court forbid him from making any claims of innocence. Now, to be sure, this defense is a tough one to make. It's an uphill battle. And that he was coerced into writing this detailed letter. While it may seem rather unlikely to us that the jury would buy it, it is our position that the wholesale denial of his ability to do so requires, that the jury gets to pass on it in the first instance requires that he gets a new trial. It wasn't wholesale. He got to talk some about it. About not having committed this crime? About not having meant to write, not having intended the letter. Correct. But he never got to rebut the evidence that said, well, this is why he would have done it. I mean, yes, he said, I didn't do it. Okay, but she was going to testify against him, right? Presumably. Okay. And so whether he did it or did not do it, if she testified against him, he could be held liable. Correct. He could be convicted even if she was lying. That does happen, I'm sad to say. Yes, and I need to back up. She would not, it is his position that she would not testify because it would never get that far, that the charges would be dismissed because there's no evidence from the perspective of the children. This is his mindset anyway. This is what he wanted to tell the jury. He didn't get to do that. He should have been able to, the jury should have been able to pass on that first, given the weighty interest involved here, which is the right to present a defense. And that is my argument for today. So if you have any questions. What's your best case for the proposition that it's a defense to seeking the murder of your ex-wife because someone else is telling you to do it, who's in prison, not holding a gun to your head kind of thing? I understand those kinds of cases. But just somebody in the prison who's with you in prison is threatening you, but, I mean, they're not holding a gun to your head. And so you go out and you send a letter because if somebody had followed that letter, she'd be dead. So what is the best case for the proposition that that is a defense to the attempted murder claim? Well, and, of course, we didn't get to hear it completely, which is why we have this argument here today, I think. But it would be this. Emmanuel, there's evidence that he's a bad guy. He hurts people. He beats up people. He's got a disciplinary record that he beats up people. So he says, look, you write this detailed letter and I want it to look real. I'm going to keep it. And if you mess with me, if you do not do what I say, this goes to the police. It's not a question of whether somebody else was going to use this to kill the ex-wife. The question is, you know, he would have this letter to hold over the defendant for money. There was evidence that got out. It was fairly stifled, but it did get out that Mr. Kelly's got money, that the inmates knew that he had money. And this was a way to get Kelly. Yeah, but I'm sorry. What's your best case that supports your argument here? I'm talking about citing a case. Oh, citing a case. I'm not talking about the facts. A case is something that is written by a court. I got you. Yeah. It goes online and so on. So you're telling me to make my best case. Well, you know, the standard of review that I cited in the brief about when excluding evidence impinges on a, I forget the term, and I don't have it with me, basically on a fundamental right, then that's what happened in this case. I guess I'm not asking this question in a way that you understand it. I'm asking for a case site that shows that what he was excluded from putting on was a defense to this murder-for-hire claim. Oh, well, there are no cases that I could find that involved the situation that's presented in this case, and I looked in every jurisdiction, at least one in which, you know, someone was forced to write a letter like this or something that was held over them. Do we know what happened to the state court proceedings? I do. Well, I was told by counsel for Mr. Kelly, who's representative of the state, that the, this is what I was told, the charges are going to be dismissed this month, before the end of this month. Why? I don't know. I can only, I would like to think it was for the very reasons that Mr. Kelly was trying to tell the jury, that they don't, there's no evidentiary support for these charges. But, you know, I can certainly provide the court with. I know it's outside the record, but I'm just curious. Yeah. Well, if it's a reasoned ruling, I could submit it as a judicial notice or supplement the record or 28-I, I think. But, so that's my argument for today. You saved some time for the bill. Thank you. Ms. Walker. Good morning, Your Honors. May it please the Court, I'm Christina Walker, the Assistant United States Attorney representing the government on this appeal. The first issue that I'd address would be the waiver issue as to the 103A. Interpretations from this Court of 103A, particularly the Ramirez-Lopez case, indicate that not only does the defendant need to put a formal offer of proof, which wasn't done in this case, but he also needs to indicate why the evidence should be admitted, and that didn't happen in this case. What about, oh, I'm sorry. Waiver or forfeiture? I'm sorry, Your Honor. Is that waiver or forfeiture? I would say it's a waiver under 103A. Okay, and then what about my question to him where the judge expressly asked, is there an exception to the hearsay rule? And instead of saying, well, yeah, we're not really putting it on for the truth of the matter or we're doing this or that, he said, well, I will change the question. I'll ask him not to specify what he said but also what he observed him doing or whatever. So that strikes me as, if I was the trial judge, it would strike me as the lawyer kind of agreeing with me, the lawyer that was trying to present the evidence kind of agreeing with me or agreeing with the opponent that we shouldn't go there. That's true, Your Honor, and that's why we agree that he waived that issue. And, excuse me, yeah, waived that issue. And throughout the testimony, he even corrects his client and says something, the defense counsel corrects his client and says, oh, wait, don't answer that. Well, if his lawyer was incompetent, is that a waiver? Well, Your Honor, I would say that. Are you going to say incompetence of a lawyer is a waiver? No, Your Honor, but it was also not just the attorney. It was also the judge. I mean, I think that there's – Well, if the judge is wrong, the judge is wrong. If the lawyer was incompetent, he's incompetent. I don't see how that's a waiver. Well, I guess that would be grounds for 2255 if the attorney was incompetent. But the record is replete with instances in where he almost invited the court to rule that this material was not admissible. And what exactly would the defense be? So if the judge had just said, I'm going to let every piece of evidence in. I'm not going to overrule anything. I'm not going to sustain any objection. I overrule them all. Go for it. Okay, what is the defense here that was not being allowed to be asserted? I'm a little struggling with that because I don't think, with the exception of someone holding a gun to your head, that you can just go around murdering people because someone's threatening to take your money or something. I don't know. Well, Your Honor, he was able to present it. I mean, I think in our brief and the record. But what is the defense? I guess, you know, I guess that's why the government objected because there really is what type of defense is there to this? It's not duress because duress, for instance, in the Ramirez-Lopez case, you get an instruction on duress, and you're looking at, you're acting because someone's going to hurt you, and that's not the issue here. There was never a duress defense. So it was a defense that he came up with, and he had an ample opportunity to present it despite the objections. There was testimony that Mr. Emanuel was a muscle in the jail before the government objected. How did he threaten you? He wanted money. He was going to tell his attorney that I had confessed to him about molesting the girls. He was asked, Mr. Kelly, why were you in general population? Did you receive threats from somebody? Yes. He talked about revising the letter with Emanuel looking over him and making sure that it was revised. He talked about relenting and then relenting and writing the letter. He talked about he didn't tell the authorities because he was scared, and he was going to wait until after his trial to tell the authorities and redirect. When they asked him, why would it be held over your head? Because I wouldn't pay them. They wanted money. So he had ample opportunity to present this defense. And then— And not just an opportunity. I mean, the jury actually heard this. The jury heard all that. And then at his closing argument, he brought it up. And not only through his testimony was he able to show that Mr. Emanuel was a dangerous person, that Emanuel's booking sheet where he was booked for second-degree murder was introduced. The booking officer at the jail indicated that Emanuel had been moved for flight several times. When did the government make this objection? Your Honor, I guess on the face of it, it appeared to be hearsay. Was there any indication that he was going to call a witness to substantiate what he said? No. No one called Mr. Emanuel, or there's no indication in the record that anyone intended to call Mr. Emanuel or any of it. Anybody else? Is there any indication he was going to call a witness? No, there is not. The record doesn't indicate that he was going to call any witness to substantiate this defense. Then we'd also point out that in the jury instructions, the judge made it pretty clear that the jury was not going to hold the fact that he was sustaining these objections against the defendant. The judge said it's the duty of the lawyer to object to evidence which he believes may not properly be offered, and you should not be prejudiced in any way against a lawyer who makes objections or against the party he represents. And also the judge said do not assume from anything I may have done or said during the trial that I have an opinion concerning any of the issues in this case. So the judge made it pretty clear that the fact that he was sustaining these objections shouldn't be held against the defendant. Then the Wheaton, excuse me, I think it's pronounced the West, the Wiest case has two prongs for determining the substantial rights. And if we look, if we do the plein air standard of review, if you look at substantial rights, the Wiest case has this two prong where you look at whether the defendant was able to make his point, which we assert the record shows he was. He was able to make his point. And second of all, you look at the testimony that the government presented or the evidence the government presented to show that the defendant was guilty. And here, excuse me, you have the letter, the detailed nature of the letter where he described what she looked like, how tall she was, where to hide, how to get rid of the gun, just details that showed his intent to send this letter to have her killed. It was not a vague letter saying, oh, you know, she owns a tanning booth and she works over there. It was an extremely detailed letter. And then also if you look at the video of the interactions between Mr. Emanuel and the defendant and the other inmates, there's no indication of duress. They're doing the fist bump. They're doing the high five. There's no indication that he was in any way coerced. And then let's see. Okay, what about the fact that you have a motive because this sex charge would be dismissed? Yeah, Your Honor, I was going to go to that as well. It could have been he could have ‑‑I mean, there was evidence in the trial that he was also upset about his wife dating someone. I mean, the government introduced just the bare minimum to show that while he was in jail, there had to be an explanation to the jury of why he was sitting in jail. It happened to be for the rape of the daughters, but it could have been for burglary of the wife or something. It just happened to be the rape. So it had a probative value for the government. Now, in terms of when you look at the judge's ruling on this, excuse me, the judge wanted to prevent a mini trial on the rape charges. We had the indictment. We had the booking. We had the wife testified about why he was in jail. But the defendant wanted to bring in the nurse who examined the children, the children, the detective, the assistant DA. That's more victims ‑‑ I mean, excuse me, that's more witnesses than the witnesses that were presented in the case in chief. It was going to be technically a mini trial that would have confused the jury as to what was at issue. The judge made it clear that, excuse me, that what was important was that he was in jail for a charge, not the strength of the evidence of the government, that the important thing was he was in jail, not whether or not this would have been a successful rape charge or not. You're saying it was such a fake claim against him, he would not have had a motive to kill her, like he might have if it was a really good case against him and she was going to be a really good witness on it. That's his argument. I'm not agreeing or disagreeing with his argument. I'm just saying that's his argument. So what's your response to that? Well, he was able to ‑‑ in the trial, he did say, I just wanted to get this over with and prove my innocence. He was able to present his claim that he didn't do this. He also presented evidence that he filed a motion for speedy trial at the state level because he wanted to get it over with. He wanted to prove his innocence. That was something he brought up. And then he also brought up the fact that she had asked for spousal and child support like a month before the state trial, which would indicate that why would she ask, you know, his argument was, why would she ask for this if he was going to spend the rest of his life in jail for rape? So he was able to ‑‑ But his wife did testify that he raped the children, correct? The wife? I don't know. So, I mean, she had been the one ‑‑ I'm not sure if she had reported it or not, but I assume at a rape trial that the children would have been the witnesses. I mean ‑‑ But did the government present evidence that he did, in fact, rape the children? No, because we didn't want to present him any trial. And from what I heard, I mean, again, this is outside of the record, I thought the charges were still pending. Again, as Mr. Averly said, I can submit a 28‑J letter or something later on if I determine what's going on with those state charges. But as of yesterday ‑‑ To me, it seems like if she's the only witness against him on the rape charge, not that I think it's something that should be done, that does give him a motive to get rid of her because then there isn't any evidence against him versus when there's a ton of DNA or I don't know what else there might be, but, you know, where they tested the children and found sperm and so on and so forth. Is that right? Well, the children themselves, that they were ‑‑ No, what I'm saying is his motive to me seems increased the more she's the fake part of the case. That's ‑‑ you know, I guess that would be his motive, would be to get rid of her. Not that I think that's proper, don't misunderstand. Yeah, I mean, I think there was also some indication that, you know, he might have done this to intimidate the children that if their mother was killed, then they would be intimidated and not want to testify. So it would not just be to get rid of her, but also to intimidate the children. Did he want to present evidence that the elder child said this never happened? All we know from the record, and that's another issue that we have, is that there never was a proffer as to what he had presented. All he said was that he wanted to present a detective, the victim's sexual assault nurse examiner, and the assistant DA. So that's all we know that he wanted to present. And there's a case that indicates that it's ‑‑ oh, yeah, Daniels, that there's no abuse of discretion, any error was harmless because the defendant never explained the nature or admissibility of the information he would have presented. So there's a whole issue as to what he really could have presented if he wanted to because some of this would not have been admissible. You have statements about the children. I mean, they'd have to testify. Then what do you do? You end up having a mini trial. You call the children. When I was a Texas state judge, they had to be question by question in presenting for me to sustain or overrule objections, not just, well, there's this whole flop of stuff. Okay, well, no, that's not how I handled it. And so that was one of the issues, that there really was no proffer by the defendant of what he would have presented, just this allegation that he wanted to prove that the minor victims gave recorded statements. But, again, he just couldn't present the statement. He'd have to ‑‑ And, again, you know, we point to the jury instructions. The jury was instructed. Is this really a habeas case, this case, that his lawyer was just incompetent so he needs to file a habeas because that's not in front of us? I guess I handle the habeases in the office, so I guess I'll eventually see this. Well, of course, he might win this case, but if he doesn't. That's a hard question because it just wasn't the attorney. I mean, the court could have overruled the objection. But, again, the court was not given a reason to overrule the objection. Right. That's the problem. Well, I mean, if the court made an error that affected the outcome, then that's this case. Oh, exactly. No, our proposition would be that any error was harmless. Or, well, going back to our original argument, that you can't even consider ‑‑ Even if it's prong one and two of plain error, it does not mean prong three is your argument. Yes, if we even look at plain error, if we don't look at 103A and the holding in Ramirez-Lopez, which is very similar to our case. Even though there was a duress defense, he was crossing the border illegally, and he claimed he was forced to because some individuals came up to him and said, you're in the opposite cartel than we are. You know, we're going to kill you. And so he ran across the border. That was his defense, his duress defense. And the government objected when he was going to testify about what these individuals said, which is basically the same situation here, it's a threat. And the objection, the government made an objection. It was sustained. And this court held that he made no formal offer of proof, and then he didn't indicate why it should be admitted. And did not preserve the issue for review. So we would argue that it's very similar, the Ramirez-Lopez case, in terms of not preserving an issue for appeal by not articulating a reason for the admissibility of the evidence. Do you have the site for the case? Oh, yes, I'm sorry. I always like to put that up. Oh, I'm sorry, Your Honor. That's 630 Fed APPX 352. It's a 2016 case. Okay. Then, you know, I have pulled up the briefs on the Ramirez-Lopez case, and if you look at the briefs and the dialogue, it's almost the same. I mean, it's almost like very similar to our case where you have a, you know, what did these individuals say? Objection. Sustained. And then no articulation as to why this was admissible, and then this court found that the issue was not preserved for appeal, for review. So my light is up. Is there any other questions? Thank you. Okay. Thank you, Your Honor. Just a couple points. Just wanted to make it clear what I think the defense was, because it seems to be confusing. The defense was that Mr. Emanuel wanted to own this guy. He wanted an insurance policy. If he didn't get compliance for whatever, for money, whatever, it's not that he was going to have his wife killed. It was that he said, look, all I've got to do is give this to the police. It's in great detail. They're not going to believe your argument of coercion. That's his defense. Regarding the proffer on the rebuttal to the motive evidence, the government is reading from its own motion as to what that proffer is, that he wanted various witnesses to testify. I don't know where that information comes from. Probably discussions maybe they had. But the response that the defense makes to that motion is where I would say is the proffer. And it's ROA 54. And the proffer discusses the specific statements, recorded statements by these witnesses that I mentioned earlier about never having been raped, and then the medical exam and the other contents of those statements that tend to exonerate him. That's all I have for rebuttal. Thank you. We appreciate your service as a court-appointed attorney. We very much do. Thank you. You've done an excellent job here, Clyde.